UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Montoya Childs, and Anthony Daniels,

        Plaintiffs,                                Civil No. 10-3781 (SRN/JJK)

v.

Extended Stay of America Hotels, and         **MEMORANDUM OPINION**
HVM L.L.C.,                                             **AND ORDER**

        Defendants.

Vytas M. Rimas, Rimas Law Firm, PLLC, 18281 Minnetonka Blvd., Suite E, Minneapolis, MN 55391, for Plaintiffs.

Cynthia A. Bremer and Jody A. Ward-Rannow, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 90 South Seventh Street, Suite 3800, Minneapolis, MN 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Court Judge

      This matter came before the Court on Defendants' Motion for Summary Judgment. (Doc. No. 17.)  For the reasons that follow, Defendants' Motion is granted.

**I.    BACKGROUND**

      On July 10, 2009, Plaintiffs Montoya Childs and Anthony Daniels, both black adults, were driving to their Missouri home with their two daughters after visiting Minnesota on a family trip.  (Doc. No. 20-1, Ex. A, pp. 16–19.)  Realizing they needed to rent a hotel room for the night, they stopped to inquire about availability at the Extended Stay America Hotel ("ESA") in Woodbury, Minnesota.  (Id. at pp. 18–19.)  ESA is owned and operated by HVM L.L.C. (collectively "ESA").  (Doc. No. 21.)

1

Childs entered ESA around 9:00 p.m. (Doc. No. 20-1, Ex. A, p. 19.) Two ESA employees, Kevin Thornton and Melissa LeClaire, were stationed at the front desk. (Id. at p. 20.) It was unusual to have two front desk employees working at ESA at that time of night, but it was LeClaire's first shift and Thornton was training her. (Doc. No. 20-1, Ex. E, pp. 63–65.) Childs asked the ESA employees if a room with two beds was available; Thornton responded affirmatively and quoted a rate of $64.99. (Doc. No. 20-1, Ex. A, pp. 20–22.) When Childs inquired whether ESA had a pool and a continental breakfast, Thornton told her that those amenities were not offered at ESA but were both available at the Holiday Inn located next door. (Id. at p. 20.) He recommended that Childs inquire as to room availability there. (Id.) Childs left ESA without booking a room. (Id. at pp. 20–22.).

After Childs left the hotel, Thornton and LeClaire prepared ESA's computer system for a "night audit." (Doc. No. 20-1, Ex. F, p. 14–15.) A night audit is a computer program ESA uses to close out the rented hotel rooms in preparation for the next day. (Id.) ESA employees cannot access the computer reservation system to determine whether rooms are available to rent during the 30 to 45 minutes when the audit is running. (Id. at pp. 14, 17, 24–25.) To avoid turning away potential guests during the audit, ESA employees may print out a vacant room list before the audit begins and consult that document if a customer requests a room while the night audit is running. (Id. at p. 23.)

At approximately 10:00 p.m. on the evening of July 10, 2009, ESA employees ran the night audit. (Doc. No. 20-1, Ex. F, p. 14.) LeClaire then printed a vacant room list around 10:25 p.m. indicating that ESA had rooms available. (Doc. No. 20-1, Ex. H.) Childs entered ESA for the second time around 10:30 p.m. and asked to book a room at the previously offered rate, but Thornton informed her that the hotel was fully booked. (Doc. No. 20-1, Ex. A, pp. 24–26; Doc.

No. 20-1, Ex. C, pp. 25–26, Doc. No. 20-1, Ex. B, p. 46.)  Daniels then entered the hotel, Childs informed him that no rooms were available, and they left.  (Doc. No. 20-1, Ex. B, p. 46.)

Several minutes after leaving the hotel, Daniels called ESA from the hotel parking lot to inquire about room availability.  (Doc. No. 20-1, Ex. A, pp. 26–27; Doc. No. 20-1, Ex. B, pp. 47–48.)  The ESA employee who answered the phone informed Daniels that no rooms were available.  (Doc. No. 20-1, Ex. A, p. 27; Doc. No. 20-1, Ex. B, p. 48.)  At approximately 11:00 p.m, LeClaire and Thornton finished their shifts and Stephen Altendorfer arrived at ESA to start the night shift.  (Doc. No. 20-2, Ex. K, pp. 9-12.)  Thornton informed Altendorfer that ESA had no vacancies that evening.  (Id. at pp.10–11.)

Childs and Daniels booked a room at another hotel in Woodbury, Minnesota, but Childs called ESA at approximately 11:30 p.m. to inquire about availability.  (Doc. No. 20-1, Ex. A, p. 27–29.)  She has since explained that she disguised her voice during that call to "sound Caucasian . . . so it didn't sound like [her] regular voice."  (Id. at p. 29.)  According to Childs, the ESA employee on the phone stated that there were hotel rooms available for $64.99 plus tax.  (Id. at p. 30)  Stating that her name was "Ann," Childs inquired about how she could reserve a room and the employee told her that she could just come to the hotel.  (Id. at p. 30–31.)

At approximately 11:45 p.m., Daniels again called ESA to inquire about availability.  (Doc. No. 20-1, Ex. A, p. 31; Doc. No. 20-1, Ex. C, p. 26–27; Doc. No. 20-1, Ex. B, p. 54.)  He explained to the ESA employee on the phone that he had previously been told that the hotel was fully booked and wanted to see if anyone had cancelled.  (Doc. No. 20-1, Ex. B, p. 54; Doc. No. 20-1, Ex. A, pp. 31–32.)  The ESA employee told Daniels that no rooms were available.  (Doc. No. 20-1, Ex. B, p. 54; Doc. No. 20-1, Ex. A, p. 32.)  ESA records demonstrate that Thornton, LeClaire, and Altendorfer did not check in anyone at ESA from the time that the night audit

began until the day shift started after 7:00 a.m. on July 11, 2009.  (Doc. No. 20-1, Ex. H; Doc. No. 20-2, Ex. J.)  One entry in ESA's records, however, shows that a guest checked into ESA "after [the] audit on Friday Night."  (Doc. No. 20-2, Ex. J.)  The entry does not identify the clerk who checked-in the guest and shows that the guest stayed at ESA for "0" nights.  (Id.)

On July 11, 2009, Childs called ESA and requested to speak with a manager.  (Doc. No. 20-1, Ex. A, p. 90.)  She was informed that no manager was currently on duty, but that she could call back later.  (Id.)  Childs did not call back.  (Cf. id.)

Approximately one month later, Childs complained by e-mail to ESA that she had been refused a room because of her race.  (Id. at pp. 37–38.)  Doug Anderson, the ESA general manager, called Childs in response to her e-mail.  (Doc. No. 20-1, Ex. E, p. 13–14; Doc. No. 20-1, Ex. A, p. 38.)  While he did not believe discrimination had occurred on July 10, 2009, he apologized to Childs and offered her a free night stay at ESA.  (Doc. No. 20-1, Ex. E, pp. 14–15; Doc. No. 20-1, Ex. A, p. 38.)  Childs declined, informing Anderson that she would not stay at his establishment.  (Doc. No. 20-1, Ex. A, p. 38.)  Anderson called Childs back approximately twenty minutes later, confirmed the date of Child's interaction with ESA, and explained that it had been LeClaire's first shift.  (Id. at pp. 38–39.)  Childs asked if ESA, in fact, had hotel rooms available that night.  (Id.)  Anderson replied affirmatively and apologized that she had previously been misinformed.  (Id.)

## II.     PROCEDURAL HISTORY

On March 18, 2010, Childs filed a Charge of Discrimination with the Minnesota Department of Human Rights ("MDHR") alleging a violation of the Minnesota Human Rights Act ("MHRA") § 363A.11, subd. 1 when ESA "discriminated against [her] in the area of public accommodations on the basis of race . . . ."  (Doc. No. 20-2, Ex. P, p. 2.)  No claim for business

4

discrimination was included in Childs' charge. (Cf. id.) On June 15, 2010, the MDHR dismissed Childs' charge and informed her that she could bring a civil action within 45 days of receipt of the dismissal. (Doc. No. 20-2, Ex. Q.) Daniels never filed a charge with a local commission or the Commissioner of Human Rights and he was not named in the charge filed by Childs. (Cf. Doc. No. 20-2, Exs. P–Q.)

On July 30, 2010, Childs and Daniels jointly filed a complaint in Minnesota state court against ESA alleging four claims of racial discrimination: (1) a state law claim for public accommodation discrimination under Minn. Stat. § 363A.11, subd. 1 (Count I); (2) a state law claim for business discrimination under Minn. Stat. § 363A.17(3), (Count III); (3) a federal claim for violation of 42 U.S.C. § 2000a (Count II); and (4) a federal claim for violation of 42 U.S.C. § 1981 (Count IV). (Doc. No. 1-1.) ESA removed the action to federal court on August 20, 2010. (Doc. No. 1.) ESA has now moved for summary judgment on all the claims asserted by Childs and Daniels. (Doc. No. 17.)

**III.   DISCUSSION**

   **A. Standard of Review**

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Catrett, 477 U.S. at 322. The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009). The nonmoving party may not rest on mere allegations or denials, but must show through the

presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

    **B. Daniels' MHRA Claims For Public Accommodation and Business Discrimination and Childs' MHRA Claim For Business Discrimination are Time Barred**

Minnesota's state statute of limitations applies to the claims asserted by Childs and Daniels because they assert state law claims. Settle v. Fluker, 978 F.2d 1063, 1064 (8th Cir. 1992). Under the MHRA, a claim of an unfair discriminatory practice must be (1) brought as a civil action, (2) filed in a charge with a local commission, or (3) filed in a charge with the Commissioner of Human Rights within one year after the occurrence of the alleged discrimination. Minn. Stat. § 363A.28, subd. 3. The limitations period begins "when the discriminatory act [occurred]." TRI, Inc. v. Boise Cascade Office Prods., Inc., 315 F.3d 915, 920 (8th Cir. 2003) (citation omitted). The doctrine of equitable tolling may allow a plaintiff to pursue an otherwise time barred claim by showing that "despite all due diligence, [the plaintiff was] unable to obtain vital information bearing on the existence of his claim," Henderson v. Ford Motor Co., 403 F.3d 1026, 1033 (8th Cir. 2005) (quotations and citations omitted). Equitable tolling should only be applied in "exceptional circumstances." Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1330 (8th Cir. 1995).

Daniels' claims against ESA for public accommodation and business discrimination are time barred. He alleges that the discriminatory act occurred on July 10, 2009 when ESA refused to rent him a hotel room. He did not file a charge with a local commission or the Commissioner of Human Rights regarding ESA's allegedly discriminatory conduct by July 10, 2010. He was also not a named party in a charge brought against ESA by Childs. Under Minn. Stat. § 363A.28, subd. 3, Daniels was required to bring a civil action against ESA for his claims of public

6

accommodation and business discrimination within one year of the alleged discriminatory conduct. He filed the present action against ESA on July 30, 2010—over one year after he was allegedly denied a room based on his race. Since he did not follow the procedural requirements under Minn. Stat. § 363A.28, subd. 3, Daniels' claims are time barred.

Childs' claim against ESA for business discrimination is also time barred. She filed a charge with the MDHR for public accommodation discrimination in March 2010, but it did not include any allegations of business discrimination. She did not file any separate charge related to her business discrimination claim or amend her charge. She was therefore required under Minn. Stat. § 363A.28, subd. 3 to bring her claim within one year of the alleged discriminatory conduct. Like Daniels, she first asserted her business discrimination claim on July 30, 2010, more than one year after the alleged discrimination occurred. Childs seeks equitable tolling of the statute of limitations, but it is unavailable to her because she has made no showing of exceptional circumstances here. She had knowledge of a potential legal claim against ESA because she filed a charge in March 2010. Had she exercised due diligence, she would have been able to obtain all information related to her business discrimination claim.

Accordingly, Daniels' MHRA claims for public accommodation and business discrimination and Childs' MHRA claim for business discrimination are time barred. ESA is entitled to summary judgment on those claims.

**C. The Court Lacks Jurisdiction Over Daniels' Title II Claim**

In Count II, Daniels asserts that ESA violated Title II of the Civil Rights Act by discriminating against him at a public accommodation. 42 U.S.C. § 2000a. When a state or local law prohibits discrimination in a public accommodation and provides a remedy for such practice, § 2000a-3(c) requires notice to the state or local authority as a prerequisite to filing a

civil action.  Bilello v. Kum & Go, LLC, 374 F.3d 656, 658–59 (8th Cir. 2004) (A civil action may not be brought under § 2000a-3(c) "before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person[.]").

Minnesota prohibits discriminatory practices in public accommodations under Minn. Stat. § 363A.06, and the plain language of § 2000a-3(c) therefore required Daniels to give notice to the MDHR before bringing a claim in federal court under Title II.  Daniels never filed a charge with the MDHR for the claim he now seeks to advance against ESA and he was never named as a party in a charge brought by Childs.  The Court therefore lacks jurisdiction over Daniels' Title II claim, Bilello, 374 F.3d at 658–59, and ESA is entitled to summary judgment on that claim.

### D.  Childs' Title II and MHRA Public Accommodation Claims

Counts I and II of the Complaint allege that ESA refused to rent Childs a hotel room on July 10, 2009, denying her full use and enjoyment of a public accommodation in violation of Title II of the Civil Rights Act and the MHRA.  Title II provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race[.]"  42 U.S.C. § 2000a(a).  The language of the federal statute is mirrored by the MHRA, which provides: "It is an unfair discriminatory practice . . . to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of race[.]"  Minn. Stat. § 363A.11, subd. 1; Gold Star Taxi & Transp. Serv. v. Mall of Am. Co., 987 F. Supp. 741, 752 n.5 (D. Minn. 1997).

Since no direct evidence of discrimination exists in this case, (Doc. No. 23), Childs' Title II and MHRA claims of public accommodation discrimination are analyzed using the McDonnell Douglas burden-shifting framework. Monson v. Rochester Ath. Club, 759 N.W.2d 60, 63 (Minn. Ct. App. 2009).[1] Under the burden shifting framework, a plaintiff must present prima facie evidence of discrimination; the defendant then must provide a legitimate, nondiscriminatory reason for the action; and the plaintiff then must show the explanation is merely a pretext. Sigurdson v. Isanti County, 386 N.W.2d 715, 719–20 (Minn.1986).

The elements of a prima facie case for public accommodation discrimination under Title II and the MHRA are similar, but not identical. Title II requires that the plaintiff show: "(1) [she] is a member of a protected group; (2) [she] was similarly situated by circumstance to other individuals not members of such a group; and (3) [she] was treated more harshly or disparately than other similarly situated non-group members." See, e.g., Armstrong v. Target Corp., No. 10-1340, 2011 WL 1375586, at *2–3 (D. Minn. Apr. 12, 2011) (citing O'Neal v. Moore, No. 06-2336, 2008 WL 4417327, at *24 (D. Minn. Sept. 24, 2008), aff'd, 355 Fed. Appx. 975 (8th Cir. 2009)). The MHRA requires the plaintiff to show: (1) membership in a protected class; (2) denial of services or accommodations; and (3) that the denial occurred because of the plaintiff's membership in the protected class. Monson, 759 N.W.2d at 63.

---

[1] Case law interpreting Title II is scarce and the Eighth Circuit has not directly examined whether courts should analyze such claims under the McDonnell Douglas framework, but has suggested that the burden shifting framework is appropriate in Title II cases. See Adams v. BSA-Chickasaw Council, 271 F.3d 769, 776–78 (8th Cir. 2001) (no reversible error when district court applied a burden shifting analysis in a Title II case). Other circuits have applied the McDonnell Douglas framework in this context. See, e.g., Fahim v. Marriot Hotel Servs., Inc., 551 F.3d 344, 349–50 (5th Cir. 2008); United States v. Lansdowne Swim Club, 894 F.2d 83, 88 n.7 (3d Cir. 1990); Hornick v. Noyes, 708 F.2d 321, 324–25 n.8 (7th Cir. 1983), cert. denied, 465 U.S. 1031 (1984); Benton v. Cousins Props., Inc., 230 F. Supp. 2d 1351, 1382 (N.D. Ga. 2002), aff'd, 97 Fed. Appx. 904 (11th Cir. 2004).

In order for Childs to assert a public accommodation discrimination claim under either Title II or the MHRA, she must show that ESA refused to rent her a room because of her race. She contends that her multiple interactions with ESA demonstrate that she was not provided with a public accommodation because of her race. She specifically highlights that ESA hotel staff recommended that she stay at a nearby hotel, denied her a room when she returned even though one was available, and offered her a room when she called ESA "disguising" her voice to sound Caucasian.

Viewing the evidence in the most favorable light to Childs, no genuine issue of material fact exists that ESA refused to rent her a hotel room because of her race. Childs' race was immediately apparent when she initially arrived at ESA and the front desk employees offered her a room. ESA employees only recommended that Childs stay at a nearby hotel after she had requested information about hotel amenities not available at ESA, including a pool and continental breakfast. Childs' phone call to ESA "disguising" her voice also does not create a genuine issue of material fact because no evidence suggests that ESA staff knew of Childs' race during the call.

The record reflects that Childs was refused a room when she returned to ESA at 10:30 p.m. even though a vacancy list showed rooms available and one customer may have checked in after the night audit began. That evidence, however, does not create a genuine issue of material fact that Childs was denied a room because of her race. ESA employees could not access the computer system during the night audit, they made no racial remarks, and showed no racial animus. Moreover, Thornton consistently told Daniels and Altendorfer that no rooms were available at ESA that evening. Nothing suggests that ESA rented a room to a customer of a

different race on that night. Accordingly, ESA is entitled to summary judgment on Child's MHRA and Title II public accommodation claims.[2]

### E. Childs and Daniels' Discriminatory Interference With a Contract Claim Under § 1981

Childs and Daniels assert a claim under § 1981 for discriminatory interference with a contract. Section 1981 provides that all persons within the jurisdiction of the United States shall have "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). The statute does "not provide a general cause of action for race discrimination" and only conduct impairing an individual's ability to contract is actionable. Gregory v. Dillard's, Inc., 565 F.3d 464, 468 (8th Cir. 2009) (en banc). The McDonnell Douglas analytical framework applies to claims brought under § 1981. Richmond v. Bd. of Regents of Univ. of Minn., 957 F.2d 595, 598 n.1 (8th Cir. 1992).

A prima facie case under § 1981 requires a plaintiff to show: (1) membership in a protected class; (2) discriminatory intent on the part of the defendant; (3) engagement in a protected activity; and (4) interference with that activity by the defendant. See Gregory, 565 F.3d at 469. It is undisputed that Childs and Daniels are members of a protected class and that they attempted to engage in a protected activity with ESA at some point on July 10, 2009. To make out their prima facie case, Childs and Daniels must show a genuine issue of material fact that ESA acted with discriminatory intent when denying them a hotel room.

Under § 1981, direct and circumstantial evidence can establish a prima facie case of race-based discriminatory intent. Kim v. Nash Finch Co., 123 F.3d 1046, 1059 (8th Cir. 1997). Evidence of systemic discriminatory practices can be highly relevant in establishing animus

---

[2]   Even if Daniels' public accommodation claim under the MHRA was not time barred or jurisdiction existed over Daniels' Title II claim, those claims would fail for the same reasons as articulated with respect to Childs.

towards members of protected classes.  White v. Honeywell, Inc., 141 F.3d 1270, 1276 (8th Cir. 1998).  Discriminatory intent may also be evidenced by racial insults, Green v. Dillard's, 483 F.3d 533, 540 (8th Cir. 2007), or a company's discriminatory policies and practices.  Cf. id.

Childs and Daniels have failed to establish any genuine issues of material fact of discriminatory intent.  No evidence shows systematic animus by ESA towards members of protected classes.  No allegation exists that ESA made racial insults or remarks to Childs and Daniels when they requested a room at ESA.  No evidence exists of discriminatory policies and practices at ESA, and in fact, ESA maintains a policy against discrimination and provides it to all employees. (Doc. No. 21, Ex. A.)  Additionally, there is no evidence that similarly situated members of non-protected classes were offered a hotel room on July 10, 2009.  Childs and Daniels therefore have failed to establish a prima facie case under § 1981 and summary judgment is granted to ESA on this claim.[3]

## IV.   ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment (Doc. No. 17) is **GRANTED**; and
2. Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated:   June 12, 2012

> s/Susan Richard Nelson
> SUSAN RICHARD NELSON
> United States District Judge

---

[3] Additionally, even though Childs and Daniels' claims under the MHRA for business discrimination are time barred, they likewise fail on the merits for the same reasons as set forth herein with respect to the § 1981 claim.